UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HOUSTON SPECIALTY INSURANCE CO. | CIVIL ACTION NO. 17-cv-1010 |
| VERSUS | JUDGE DOUGHTY |
| ASCENSION INSULATION & SUPPLY, INC., ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

The Whatley family alleges that poor workmanship during the remodeling of their home caused the renovated area to be "contaminated due to excess moisture," which sickened their children and required expensive repairs. The Whatleys filed suit in a West Feliciana Parish state court against the architect and contractors involved in the remodeling project. One of the subcontractors the Whatleys sued is Ascension Insulation and Supply, Inc., which had a commercial general liability ("CGL") policy issued by Houston Specialty Insurance Company. Ascension and Houston Specialty disagree over whether the insurer owes a duty to defend its insured and provide coverage in connection with the Whatley suit.

Houston Specialty invoked diversity jurisdiction and filed a complaint for declaratory judgment regarding its obligations to defend or indemnify under the policy. The defendants, Ascension and the Whatleys, filed motions to dismiss and asked the court to exercise its discretion to decline to entertain the request for a declaratory judgment. The

undersigned assessed those motions under the factors set forth in St. Paul Ins. Co. v. Trejo, 39 F.3d 585 (5th Cir.1994) and recommended that the motions to dismiss be denied. Doc. 52.

Now before the court is Houston Specialty's Motion for Summary Judgment (Doc. 22) that seeks a declaration that it owes no obligation to provide a defense or coverage to Ascension. Also pending is Ascension's Motion to Strike (Doc. 43), which attacks an exhibit to Houston Specialty's motion. For the reasons that follow, it is recommended that Houston Specialty's motion for summary judgment and Ascension's motion to strike be denied. It is also recommended that the court decline to continue exercising jurisdiction over Houston Specialty's complaint and dismiss it without prejudice.

**Relevant Facts**

The Whatley family alleges that they planned a renovation to their family home in St. Francisville, Louisiana. The plan included converting existing attic space into a living area, including bedrooms for two children. They hired an architect and a general contractor. The general contractor subcontracted work to Ascension Insulation and several other companies. The Whatleys allege that Ascension's duties included installing insulation in a manner that would prevent discharge of attic air and moisture into the upstairs living space.

The project was completed around May 2013. The Whatleys' son and a newborn daughter soon began occupying the renovated area. The children allegedly developed severe upper respiratory issues that required numerous medical treatments, including surgeries. The Whatleys allege that inspection of the work revealed that the bedrooms

suffer from inadequate ventilation and were contaminated due to excessive moisture, which has caused the medical issues suffered by their children. They allege that a substantial portion of the work has been deemed inadequate, defective, and in violation of the applicable residential code. Among the alleged problems is improper installation of the insulation and air sealing in the renovated areas.

The Whatleys filed suit against several defendants, including Ascension Insulation, in West Feliciana Parish state court in April 2017. Ascension tendered its defense to Houston Specialty, which had issued it a CGL policy for a 2013-2014 term. Houston Specialty began providing Ascension a defense in the Whatley suit, but under a reservation of rights to deny coverage under various terms of the policy. A few months later, Houston Specialty (which is not a party in the state court suit) filed this federal declaratory judgment action. The insurer contends that it does not owe duties of defense or coverage to Ascension because the claims arose outside the effective period of the policy and are subject to various policy exclusions.

**The Duties to Defend and Indemnify**

"An insurer's duty to defend suits on behalf of an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case." Martco, Ltd. Partnership v. Wellons, Inc., 588 F.3d 864, 872 (5th Cir. 2009). The duty to defend is governed by Louisiana's "eight corners rule." It requires the court to assess whether there is a duty "by applying the allegations of the complaint to the underlying policy without resort to extrinsic evidence." Id. The insurer has a duty to defend unless the allegations in the complaint, as applied to

the policy, unambiguously preclude coverage.  Id.  And once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit.  Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co., 677 F.3d 250, 257 (5th Cir. 2012).

The duty to indemnify for a damage claim is independent from the duty to defend and is evaluated under its own interpretative rules.  Martco, 588 F.3d at 872 n.1.  "While factual inquiries beyond the complaint are prohibited with respect to the duty to defend, they are indispensable in assessing the duty to indemnify."  Id. at 872.  When assessing the duty to indemnify, the court applies the provisions of the policy to the established facts.

**What is at Issue; The Movant's Burden**

Houston Specialty's complaint prayed for judgment in its favor "declaring that no defense or indemnity coverage is owed to defendants" under the policy.  Its motion for summary judgment asked for similar relief.  The Whatleys and Ascension responded to the motion with arguments based on the eight corners rule and the duty to defend.  Houston Specialty replied that it is already affording Ascension a defense in the state court suit, albeit under a reservation of rights to deny coverage.  The insurer states that, as a result, the "eight corners rule has no application to this Motion," and the issue here is whether the insurer has offered undisputed evidence that establishes that there is no possibility of coverage.  Doc. 37, pp.6-7.

Houston Specialty cites cases such as Allstate Ins. Co. v. Roy, 653 So.2d 1327, 1333 (La. App. 1st Cir. 1995), which stated that an insurer should not be required to provide a defense "where the undisputed facts obviously exclude coverage in a suit simply because

the allegations of the petition omit crucial, undisputed facts." The petition in Roy did not allege the date that work was performed, so there was a duty to defend under the eight corners rule. The insured later admitted at his deposition that the date of the work was outside of the policy period, so the court found that the duty to defend ended once the undisputed facts showed that there could not possibly be coverage for the claims.

Houston Specialty's burden was described in Merlin B. Smith, Inc. v. Travelers Property Cas., 811 So.2d 1097, 1100 (La. App. 2d Cir. 2002), which stated that "Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." Smith cited in support Reynolds v. Select Properties, Ltd., 634 So.2d 1180, 1183 (La. 1994), which stated the same. And the Fifth Circuit quoted that language from Smith in Cochran v. B.J. Services Co. USA, 302 F.3d 499, 503 (5th Cir. 2002).

The court interprets Houston Specialty's position as a concession that it is obligated to defend the Whatley suit under the eight corners rule, but that obligation will end if it obtains a judicial declaration that the undisputed facts show that it is not obligated to either indemnify or defend against the claims. Accordingly, the court will not analyze the duty to defend based on the eight corners rule and the pleadings/policy. It will proceed to the coverage/indemnity arguments.

**The Coverage Period**

    **A. Introduction**

The Whatleys' petition prays for recovery of damages based on harm to their property (remediation costs, loss of use, and loss of value of the property) and for personal injuries to their children (medical expenses, pain and suffering, and disability). The Houston Specialty policy issued to Ascension insures the insulation contractor for amounts it becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. The policy provides that it applies to bodily injury and property damage only if the injury or damage "occurs during the policy period …"

The policy had a coverage period of April 9, 2013 to April 9, 2014. Houston Specialty asks for summary judgment on the grounds that there is no possibility that either form of loss occurred during the policy period. As explained below, Houston Specialty has a plausible argument with respect to property damages but has not pointed to uncontested facts that preclude the possibility of coverage for bodily injury.

    **B. Property Damage**

Subsection b(2) of the coverage section of the policy provides that the insurance applies to property damage only if the property damage "occurs during the policy period" and meets other requirements. Section V, paragraph 17 defines property damage as "physical injury to tangible property, including all resulting loss of use of that property. It adds: "All such loss of use shall be deemed to occur at the time of the physical injury that caused it." The policy also defines property damage as "Loss of use of tangible property

that is not physically injured," and it states that all such loss of use is deemed to occur "at the time of the 'occurrence' that caused it."

A Louisiana insurance treatise explains that the defective construction itself is not the trigger under such a policy. "Instead, coverage is triggered under the CGL policy in effect when that defect causes physical injury to tangible property (e.g., the roof leaks or the wall collapses)." McKenzie and Johnson, 15 La. Civ. Law Treatise, Insurance Law & Practice § 6:5 (4th ed.). "When the physical injury occurred is a factual and legal issue." Id.

There are two competing theories under Louisiana law for determining when the physical injury occurred where damage develops over a period of time from continuous or repeated exposure to harmful conditions. "Under the exposure theory, damage would be considered to have occurred when the act which resulted in the damage took place, not when the damage was discovered." Eagle Pipe & Supply, Inc. v. Amerada Hess Corp., 79 So.3d 246, 278 n.75 (La. 2011). Even if the damage was not discovered or manifested until after the policy period, the insurer would be liable if its policy period fell either at the inception or during the course of exposure. Id.

The competing view is the manifestation theory. "Under the manifestation theory, property damage would be considered to have occurred when it became manifest, regardless of when the act from which it resulted occurred." Eagle Pipe, 79 So.3d at 278 n. 75. Stated another way, the property damage is deemed to have occurred at the point when it is discovered rather than when the insured committed the negligent act that ultimately caused the damage.

The Supreme Court of Louisiana has not specifically adopted either theory in the context of a case such as this. But "the clear weight of authority in more recent cases adopts the manifestation theory." Scottsdale Insurance Co. v. TL Spreader, LLC, 2017 WL 4779575, *8 (W.D. La. 2017) (Drell, J.), citing cases, including Clarendon America Ins. Co. v. Southern States Plumbing, Inc., 803 F.Supp. 2d 544, 548 (W.D. La. 2011) (Stagg, J.).

The Houston Specialty policy had a coverage period of April 9, 2013 to April 9, 2014. Houston Specialty does not point to any evidence regarding when the property damage became manifest or was discovered. It relies solely on the allegations in the petition. The Whatleys alleged in their petition that they planned the renovation in "late 2012," and "the renovation was completed around May 2013." Petition, ¶¶ 4 and 9. The Whatleys alleged that they engaged an environmental specialist in February 2017 to examine their residence, "during which it was discovered that the renovated areas … suffer from inadequate ventilation and were contaminated due to excessive moisture." ¶ 11. Another consultant inspected the house in March 2017, and its inspection revealed that a portion of the work, including the installation of the insulation, was inadequate or defective. ¶ 12.

Ascension and the Whatleys do not contest that a strict application of the manifestation theory would bar coverage for the property damage claims. They argue, instead, that Louisiana law is not settled, and they point to decisions that favor their competing view. They begin by noting that the petition alleges that the renovation was completed around May 2013, which was within the policy period. They then embrace the

approach of <u>Orleans Parish School Board v. Scheyd, Inc.</u>, 673 So.2d 274 (La. App. 4th Cir. 1996), in which construction on a school was completed in 1987 but the school board did not become aware of possible plumbing problems until 1991. An investigation determined that the sewer piping was not installed properly. One of the plumbing subcontractors that was sued for the damages made demand on its insurer that had issued a policy with a term for the period 1985 to 1986, during which construction was underway but long before the damage was manifest.

The insurer argued that it owed no duty to defend because the property damage did not manifest itself until almost six years after its policy expired. The court cited a decision from another state court that had embraced the manifestation approach as the "better rule," but the <u>Scheyd</u> court determined: "We cannot make the 'quantum leap' and say that the manifestation theory is applicable, as a matter of law, in all cases." <u>Scheyd</u>, 673 So.2d at 277-78. The court stated that, in the limited context of deciding whether the petition unambiguously excluded coverage, application of the manifestation rule did not support a conclusion that there was absolutely no coverage, and thus no duty to defend. <u>Id</u>. at 278. It noted that a trial on the merits could produce evidence that the actual damage occurred earlier during the coverage period even though it was not discovered until later. <u>Id</u>.

The court need not decide now whether the policy might provide coverage for property damage in the Whatley suit. That is because, as explained below, Houston Specialty is not entitled to summary judgment with respect to the bodily injury claims presented in the petition. If there is one claim on which the insurer must defend and potentially provide coverage, then it is not entitled to a declaratory judgment freeing it of

all further obligations with respect to the Whatley litigation. Accordingly, if the court accepts the recommendation of the undersigned with respect to the bodily injury claims, then this property damage dispute need not be decided.

This approach is also consistent with the observation in a number of declaratory judgment actions that the duty to indemnify issue was not ripe when the underlying state court lawsuit had not been completed. Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 536-37 (5th Cir. 2004) (under Texas law, the duty to indemnify was justiciable only after the underlying suit was concluded unless the same reasons that negated a duty to defend negated "any possibility the insurer will ever have a duty to indemnify."); Coregis Ins. Co. v. School Board of Allen Parish, 2008 WL 2325632 (5th Cir. 2008) (given the difficulty of interpreting a particular exclusion, and the fact-specific nature of the inquiry, further factual development at the state level was required before the court could decide the duty to indemnify); and Exxon Mobil Corp. v. Turner Industries Group, LLC, 339 Fed. Appx. 441, 446 (5th Cir. 2009) ("Louisiana questions of contractual defense and indemnity that depend on one contractual party's fault cannot be determined until the underlying lawsuit's trial on the merits concludes the fault issues.").

### C. Bodily Injury

The policy defines bodily injury as "bodily injury, sickness or disease sustained by a person …" The policy states that it applies to bodily injury only if it is caused by an occurrence and occurs during the policy period, which was April 9, 2013 to April 9, 2014. The parties appear to agree that Louisiana courts have adopted the exposure theory for such

claims, under which "coverage is triggered by mere exposure to the harmful conditions during the policy period." Cole v. Celotex Corp., 599 So.2d 1058, 1076 n.51 (La. 1992).

No party has offered evidence on this issue. Houston Specialty points only to the Whatley petition, which alleges that construction was completed around May 2013 (one month into the policy) and their son began occupying a bedroom in the renovated area "[t]hereafter." The Whatleys' daughter "was born shortly after the renovation was completed" and began occupying the renovated area "more recently." Petition, ¶ 9.

Houston Specialty states that it is not possible to confirm, from the petition alone, the dates the children were allegedly exposed. It argues that there is no evidence to confirm that either child was exposed during the policy period and that the dates in the petition "suggest that they probably did not occupy the area until after the April 2014 expiration of the HSIC policy." That might be a hopeful guess based on the allegations, but it is a far cry from pointing to undisputed facts that preclude the possibility of coverage under the policy. This argument does not entitle Houston Specialty is to summary judgment with respect to the bodily injury claims.[1]

---

[1] Houston Specialty argues that Judge Stagg's Southern States decision supports their position, but its facts are quite different. The policy at issue in that case had a term from August 2005 to August 2006. The family who filed suit (after their children developed respiratory problems due to water damage in the house) did not purchase the home and move in until September 15, 2006. Clarendon America Ins. Co. v. Southern States, 803 F.Supp. 2d at 548.

**The Exclusions**

    **A. Fungi or Bacteria Exclusion**

The Houston Specialty policy contains an endorsement entitled "Fungi or Bacteria Exclusion." It states that the insurance does not apply to:

    a.    "Bodily injury" or "property damage" which would not have occurred, in whole or in part but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or "bacteria" on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    b.    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacteria", by any insured or by any other person or entity.

Houston Specialty argues that it has no duty to indemnify or provide coverage because the Whatleys' claims are subject to this exclusion. The Whatley petition, however, does not include a single reference to fungi, bacteria, or mold (which the exclusion includes in its definition of fungus). The petition instead alleges that the bedrooms were "contaminated due to excessive moisture" and "inadequate ventilation."

Houston Specialty bases its argument for this exclusion on the report of LaGrange Consulting, LLC, one of the consultants the Whatleys hired to evaluate their home. Houston Specialty states in its brief that "LaGrange concluded that the cause of the contamination and alleged health problems of the children was mold resulting from the alleged construction defects." Doc. 37, p.13. Ascension filed a motion to strike the report on the grounds that it was hearsay. Ascension also argued that LaGrange was hired to

determine whether the design and construction was inadequate or defective and make recommendations for remediation; it was not engaged to determine whether fungi or bacteria were present, or to determine the cause of the children's health problems.

The LaGrange report begins by stating that the company was contacted by Mr. Whatley "concerning the mold in his 2nd floor" and that Mr. Whatley "was also concerned about mold in his HVAC system." LaGrange inspected the house. It observed in its report that the home had experienced "moisture and biological growth problems for several reasons." The reasons included the HVAC system being oversized, which prevented adequate removal of humidity. The attic ventilation was deemed incomplete, there were installation problems with insulation and air sealing, and there were differential pressure problems.

There is no indication that LaGrange actually tested for the presence of mold, fungi, bacteria or other substance. Its report notes that mold was mentioned by Mr. Whatley, but the focus of LaGrange's work was on the adequacy of the HVAC system, insulation, and other construction issues. The company did not make any particular findings regarding the presence of mold and did not opine, as suggested by Houston Specialty, that the health problems of the children were caused by mold.

Insurance exclusions are construed strictly against the insurer, any ambiguity is construed in favor of the insured, and it is "well settled Louisiana law that the insurance provider has the burden of proving that an exclusion unambiguously applies." Cochran, 302 F.3d at 502. "Moreover, '[s]ummary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the

policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.'" Cochran, 302 F.3d at 503.

The Whatleys' petition makes no reference to mold, bacteria or fungi. Houston Specialty has not produced any evidence other than the LaGrange report that suggests the presence of such matters or that they caused the damage at issue. A mere reference to mold in a report by a construction consultant is not sufficient to meet Houston Specialty's burden of pointing to undisputed material facts that preclude coverage under the exclusion.

Furthermore, courts have looked to such "mold exclusions" and determined that the only damages that would be excluded from coverage are those that occurred as a result of the presence of the mold. Some damages might be caused by the mold, but other damages (both property and bodily injury) may be the result of moisture, poor ventilation, and other problems that were the result of faulty insulation work. Those other damages not caused by the mold are not excluded by the policy. Hayes v. S. Fid. Ins. Co., 2014 WL 5305683 (E.D. La. 2014)[2]; Orleans Parish Sch. Bd. v. Lexington Ins. Co., 123 So.3d 787 (La. App. 4th Cir. 2013).[3]

---

[2] The exclusion in Houston Specialty's policy applies to damage that would not have occurred "but for" fungus/mold. The policy in Hayes similarly limited coverage for damages caused directly or indirectly by fungi. The insurer's motion for summary judgment was denied because "there are genuine issues of material fact regarding which property damage (was) caused by hurricane winds and rains, regardless of whether mold grew on that damage due to the moisture, and what damage would not have occurred but-for the presence of mold." Hayes at *13.

[3] The policy in Orleans Parish Sch. Bd. excluded coverage for damages "caused by" mold. The court held "that there is a distinction between mold as a loss and mold as a cause of the loss that must be recognized." Id. 123 So.3d at 796. "[O]nce mold appears—for whatever reason—what additional damages can be attributed in some way to the presence of the mold? It is these damages that ... the mold exclusion prohibiting recovery for damages 'caused by' mold are designed to address." The court also wrote, "If the event triggering the growth of mold is a covered loss under the insurance policy, then the mold is also covered and the question becomes:

Even if the presence of mold were undisputed, it would not mean that all claims against Ascension in the Whatley case were necessarily excluded from coverage. Substantial resolutions of fact would be required to make a final decision on which property and bodily injury damages were caused by mold and which were the result of other causes. As for Ascension's motion to strike the LaGrange report, it should be denied. For the reasons explained above, the undersigned has considered the report and found that it does not support Houston Specialty's request for summary judgment. Striking it is not necessary and would merely create an issue for more argument or appeal.

### B. Work Product Exclusion

The Houston Specialty policy contains exclusions k. and l., referred to as the "Work Product Exclusions." The policy provides that the insurance does not apply to:

k. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage to Your Work**

"Property damage" to "your product" arising out of it or any part of it and included in the "products-completed operations hazard."

The work product exclusions are intended to avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship. Hollybrook Cottonseed Processing, LLC v. American Guaranty &

---

what other damages have resulted solely as a result of the mold which would not have been present but-for the presence of mold." Id. at 797. Summary judgment for the insurer was reversed.

Liability Ins. Co., 772 F.3d 1031, 1035 (5th Cir. 2014). The exclusion precludes coverage for damages due to the repair or replacement cost of Ascension's actual work, but it does not preclude coverage for loss resulting from damage to other property. Id. In Hollybrook, the insured provided defective equipment to a mill, which caused a loss of use of the entire mill. The exclusion did not bar coverage for loss of use of the mill. The same is true here, where the Whatleys sued not only for mere replacement of the insulation installed by Ascension but also for related loss of use and damages to their home. There is no suggestion that the work product exclusion would apply to the bodily injury claims.

### C. Contractual Liability Exclusion

The Houston Specialty policy includes a contractual liability exclusion. It provides that the insurance does not apply to bodily injury or property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Houston Specialty argues that the exclusion applies because the Whatleys alleged that the actions and inactions of Ascension and the others involved in the project "constitute a breach of the contracts, thereby entitling the Whatleys to all damages resulting therefrom." Petition, ¶ 14.

Insurers sometimes argue that this exclusion broadly excludes coverage for liability under any contract of the insured. The insurer's theory is that the insured/contractor assumed a contractual obligation of performance on the project, and liability from his failure to perform is excluded from CGL coverage. "This broad interpretation of the 'assumption of liability' exclusion has been rejected by the courts." Broadmoor Anderson

v. National Union Fire Ins. Co. of Louisiana, 912 So.2d 400, 406-07 (La. App. 2d Cir. 2005).

The better view is that the exclusion is limited to a situation where the insured agrees to hold a third party harmless or to provide indemnification to the third party. Id. The exclusion does not bar coverage when the contractor/insured could be liable under generally applicable contract law for damage caused by its negligent failure to perform its contractual duties. Federated Mut. Ins. Co. v. Grapevine Excavation, Inc., 197 F.3d 720, 726 (5th Cir. 1999). The Whatleys' claims against Ascension are based on Ascension's own conduct, not based on Ascension's contractual assumption of the liability of a third party. The exclusion is inapplicable to the facts presented.

**Dismissal Without Prejudice**

Houston Specialty has not pointed to undisputed facts that show there is no possibility that there could be coverage under the policy or a duty to defend with respect to all claims brought against Ascension in the Whatley lawsuit. Accordingly, Houston Specialty is not entitled to summary judgment granting a declaratory judgment in its favor.

It may be that, after trial or other factual development at the state level, Houston Specialty could make such a showing. It would be an inefficient duplication of efforts to go forward with this case and attempt to develop those facts in the federal court while the state suit is ongoing and addressing similar factual disputes. When a similar situation was presented in Coregis, the Fifth Circuit suggested the district court "should consider staying Coregis's suit or dismissing it without prejudice until the underlying state court action is resolved." 2008 WL 2325632, *3.

The undersigned recently recommended that motions to dismiss based on the <u>Trejo</u> factors be denied, which would allow the court to assess Houston Specialty's motion for summary judgment. Having now reviewed the motion for summary judgment and determining that Houston Specialty's complaint cannot be resolved without a great deal of additional factual development and particular findings, it is now recommended that the court exercise its discretion to dismiss the complaint without prejudice.

The court could elect to stay this action, but resolution of the Whatley suit could take years, and even a verdict in that case and the conclusion of all appeals may not provide a factual record that could easily be applied to determine the multiple indemnity issues. It would be more efficient if this court were to dismiss Houston Specialty's complaint and allow the state court suit to resolve the factual issues. Proceeding further in federal court at this time would be unlikely to accomplish anything but a multiplication of efforts by the state and federal court, which carries the risk of inconsistent factual findings and raises concerns about comity.

If this court were to dismiss Houston Specialty's declaratory action, it is possible that the parties could present all coverage-related issues in the state court proceeding. Subject to the state court's discretion to allow the amendment of pleadings (trial is set for April 29, 2019), the Whatleys could name Houston Specialty as a defendant, Ascension could file a third-party demand against its insurer, or Houston Specialty could intervene in the state litigation. It is also possible that Houston Specialty could, if not joined in the state suit, await its outcome and then file a new complaint for declaratory judgment that asks a federal court to exercise discretion to hear its request for relief. The federal court could

then weight the Trejo factors anew, based on the additional developments, to determine whether a declaratory action should be entertained.

Accordingly,

**IT IS RECOMMENDED** that Houston Specialty's **Motion for Summary Judgment (Doc. 22)** be **denied** and that Ascension Insulation's **Motion to Strike (Doc. 43)** be **denied**.

**IT IS FURTHER RECOMMENDED** that this court dismiss the complaint without prejudice based on its discretion to entertain declaratory judgment actions.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of August, 2018.

Mark L. Hornsby
U.S. Magistrate Judge